

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-79,302-01

### EX PARTE MAURA WIGGINS LEVINE, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 744824-A IN THE 351ST DISTRICT COURT
### FROM HARRIS COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, WOMACK, HERVEY, COCHRAN, and ALCALA, JJ., joined. PRICE and JOHNSON, JJ., concurred.

## O P I N I O N

Maura Levine filed an application for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure alleging ineffective assistance of trial counsel. She bases her allegation on trial counsel's failure to request a mistake-of-fact instruction and to object to a self-defense instruction. We find that Levine does not meet her burden of showing that trial counsel's performance was ineffective in either instance and accordingly deny her relief.

### I.  Facts & Procedural History

On the night of February 10, 1997, Levine met Bill Robins at a bar in Houston. Levine and Robins had lived together briefly, but on this occasion Levine was staying at Robins's apartment only temporarily. As the two drove home together, they began to argue after Robins accused Levine of wanting to have sex with a man at the bar. Levine became frustrated, pulled into a driveway, stopped the car, and told Robins to get out. Robins got out, leaned over the front of the car, and threw a glass at the windshield. When Robins threw the glass, the vehicle accelerated forward, pinning him against a brick wall and killing him.

At 3:19 a.m., the police were notified of a fatal accident. Officers found Robins dead with a mangled leg in the driveway. The medical examiner concluded that he had died from either a combination of blood loss and shock, or from the neural response of having his leg crushed. Levine gave a written statement to the police, acknowledging that she killed Robins by pinning him against the wall with her car. According to her statement, she intended to accelerate her car backward and away from Robins but was mistaken as to the car's gear, leading her to accelerate forward into Robins. Defense counsel later argued at trial that Levine mistakenly believed her car was in park when it was actually in neutral, which led her to accelerate forward instead of backward when she shifted one click down. Yet Levine testified at trial that she accelerated forward in order to slam the passenger-side door shut and lock the vehicle because she saw Robins move aggressively toward the car and believed he was clear of the car.

Levine was charged with murder. The jury charge contained instructions for murder,

manslaughter, and criminally negligent homicide as well as the applicable *mens rea* for each offense and a self-defense instruction. The jury found her guilty of the lesser offense of manslaughter, and the court sentenced her to twenty years' imprisonment.

Levine filed a direct appeal contesting the judge's order to cumulate her manslaughter conviction with a separate conviction for attempted murder and the denial of a mistral motion after the State improperly impeached a defense witness. The Seventh Court of Appeals affirmed Levine's conviction.[1] Levine filed an application for writ of habeas corpus alleging that her trial attorney provided constitutionally ineffective assistance in the guilt phase of her trial because he failed to (1) object to the judge's inclusion of a self-defense instruction and (2) request a mistake-of-fact instruction. The habeas court entered findings of fact and conclusions of law that Levine's conviction was "not worthy of confidence in view of the fact that the jury was deprived of the opportunity to consider the statutory defense of mistake of fact while simultaneously being misled by the instruction on self-defense."

We filed and set Levine's application for writ of habeas corpus to consider Levine's ineffective-assistance claims in light of our holding in *Okonkwo v. State*.[2]

## II. Standard of Review

To obtain habeas corpus relief for ineffective assistance of counsel, an applicant must

---

[1] *Levine v. State*, No. 07-00-0155-CR, 2001 Tex. App. LEXIS 341, at *12 (Tex. App.—Amarillo Jan. 16, 2001, no pet.) (not designated for publication).

[2] 398 S.W.3d 689 (Tex. Crim. App. 2013).

satisfy both prongs of the test established in *Strickland v. Washington*.[3] First, the applicant must show that counsel's performance was deficient.[4] This requires showing that counsel made errors so serious that counsel's representation fell below an "objective standard of reasonableness."[5] Once an applicant has identified acts or omissions the he or she alleges are not the result of "reasonable professional judgment," the court must then determine "in light of all the circumstances" whether the acts or omissions fell "outside the wide range of professionally competent assistance."[6] Courts "commonly assume a strategic motive if any can be imagined" and find performance deficient only "if the conduct was so outrageous that no competent attorney would have engaged in it."[7] Second, the applicant must show that counsel's deficient performance prejudiced the defense.[8] To show prejudice, the applicant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[9] The Supreme Court defines "reasonable probability" as a "probability sufficient to undermine confidence in the

---

[3] 466 U.S. 668, 687 (1984).

[4] *Id.*

[5] *Id.* at 687–88.

[6] *Id.* at 690.

[7] *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

[8] *Strickland*, 466 U.S. at 687.

[9] *Id.* at 694.

outcome."[10]

## III. Analysis

Because we conclude that Levine has shown neither that trial counsel's failure to request a mistake-of-fact instruction was objectively unreasonable nor that his failure to object to the self-defense instruction was prejudicial, we hold that Levine does not satisfy her burden to show ineffective assistance.

### A. Mistake of Fact

We find our recent decision in *Okonkwo v. State* instructive in addressing trial counsel's failure to request a mistake-of-fact instruction. Okonkwo was convicted of forgery after attempting to use counterfeit money to obtain money orders.[11] A man in Nigeria, whom Okonkwo had never met, mailed him $60,000 and asked him for assistance in making money-order purchases in the United States.[12] Okonkwo claimed that he believed the money was real and took it to three different locations with the intent of obtaining money orders.[13] After Okonkwo successfully obtained two money orders, the clerk at the third location was suspicious about the authenticity of the money and called the police.[14] The police confirmed

---

[10] *Id.*

[11] *Okonkwo*, 398 S.W.3d at 692.

[12] *Id.*

[13] *Id.*

[14] *Id.*

that the money was forged and arrested Okonkwo.[15] The only issue at trial was whether Okonkwo knew that the money was counterfeit.[16] The jury instructions required the State to prove that Okonkwo, "with the intent to defraud and harm another, possess[ed] a forged writing, namely money, and . . . possessed the writing with the intent to pass the writing and with knowledge that the writing was forged . . . ."[17] The jury found Okonkwo guilty.[18]

On direct appeal, the court reversed Okonkwo's conviction, determining that counsel performed ineffectively by failing to request a mistake-of-fact instruction.[19] We granted the State's petition for discretionary review and reversed the court of appeals, holding that counsel's omission did not qualify as ineffective assistance.[20] Because the State had to prove beyond a reasonable doubt that Okonkwo acted with the intent to defraud or harm another as an element of the alleged offense, "the State necessarily had to prove that he knew the bills were forged, which is the same fact about which Okonkwo claimed to have been mistaken."[21] Therefore, proof of Okonkwo's culpable mental state negated the mistake-of-fact defense

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 691–92.

[21] *Id.* at 695.

and "necessarily prove[d] lack of mistake regarding the authenticity of the bills."[22]

But the facts of Levine's case are distinguishable. In *Okonkwo*, the mistake-of-fact instruction related to a specific intent: "intent to defraud or harm another."[23] Therefore, because the culpable mental state of intent to defraud could not be shown absent proof beyond a reasonable doubt that Okonkwo knew the money was forged, we held that his counsel's failure to request a mistake-of-fact instruction was not objectively unreasonable.[24] In this case, however, a correct mistake-of-fact instruction would have related to the general intent required for manslaughter and criminally negligent homicide: recklessness and criminal negligence, respectively.[25] These offenses do not concern specific intent. The jury's determination that Levine acted recklessly—instead of intentionally or knowingly—does not necessarily support the conclusion that the jury found she was mistaken as to the gear of her car or where Robins was positioned. The jury could have convicted her of manslaughter rather than murder because it had reasonable doubt about the State's version of the case or because it was convinced she acted recklessly rather than intentionally or knowingly based on the definitions of those culpable mental states.[26] Whatever the jury's reasoning in

---

[22] *Id.*

[23] TEX. PENAL CODE § 32.21(b).

[24] *Okonkwo*, 398 S.W.3d at 695–96.

[25] TEX. PENAL CODE §§ 19.04(a), 19.05(a).

[26] *See id.* § 6.03(c) ("A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of

Levine's case, it is not clear that the jury's finding of the *mens rea* of the offense negated or subsumed the mistake-of-fact issue as it did in *Okonkwo*.

Though the facts of *Okonkwo* are distinguishable, its reasoning can still guide our analysis. Indeed, as we explained in *Okonkwo*, defendants may actually benefit from the omission of the mistake-of-fact instruction. The statutory defense provides: "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense."[27] The standard of objective reasonableness included in the defense means that an honest yet unreasonable mistake does not qualify even though such a mistake negates the required culpable mental state.[28] Because of the reasonableness requirement, defendants may often benefit from an omission of the instruction.[29] If there is no instruction, there is no standard of objective reasonableness that must be satisfied, and Levine could still persuade the jury that her honest, if unreasonable, belief negated the culpable mental state for the charged offense. Thus, it is likely that Levine was offered greater protection without the

---

but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.").

[27] TEX. PENAL CODE § 8.02(a).

[28] 43 GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43:36 (3d ed. 2011).

[29] *See id.* (stating that "there is reason to hesitate" before requesting a mistake-of-fact instruction).

mistake-of-fact instruction than she would have had with it.[30] Although Levine's trial counsel admitted in his affidavit that his failure to request a mistake-of-fact instruction was "inadvertent rather than strategic," we look to the "objective reasonableness" of the trial counsel's actions, not "counsel's subjective reasons for his conduct."[31] Therefore, as in *Okonkwo*, we hold that an objectively reasonable trial counsel could have refused a mistake-of-fact defense due to its reasonableness requirement without violating *Strickland*'s first prong.[32] To hold otherwise would require us to delve into a complex analysis of trial strategy, which we generally avoid in ineffective-assistance claims.[33]

Levine also has not provided us with a convincing argument that even if the mistake-of-fact instruction were included the jury would have found her mistaken—not to mention inconsistent—beliefs reasonable. Thus Levine received the benefit of having the jury consider her mistaken beliefs without the drawback of having the jury consider the

---

[30] *See Okonkwo*, 398 S.W.3d at 696 ("[H]ad counsel pursued an instruction on mistake of fact . . . the jury would have also had to decide whether that belief was reasonable.").

[31] *Id.* at 693.

[32] *See id.* at 696 ("Therefore, counsel was not objectively unreasonable in failing to request an instruction that may have caused the jury to convict him based on a lessened burden of proof.").

[33] *See Strickland*, 466 U.S. at 688–89 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.").

reasonableness of those beliefs. Though we base our holding on this alleged ground of ineffective assistance entirely on *Strickland*'s first prong, this benefit would also likely undermine Levine's ability to show prejudice under the second prong.

## B. Self-Defense

Levine also argues, and the habeas judge agreed, that had counsel objected to the self-defense instruction and the judge omitted it from the charge, the prosecutor could not have made the "harmful argument" that Levine was presenting inconsistent defenses. The habeas judge found that counsel did not rely on a self-defense theory and did not mention self-defense during closing arguments. Rather, counsel asked the jury to acquit Levine on the ground that a verdict of not guilty is a finding of an accident. Levine argues that counsel's failure to object to the self-defense instruction enabled the prosecutor to argue that Levine was presenting inconsistent defenses, namely that the incident was both an accident and an act of self-defense. The State argued that Levine's "accident . . . oops it was self-defense argument doesn't wash."[34]

Yet Levine fails to show a reasonable probability that but for the inclusion of the self-defense instruction, the outcome of the case would have been different. Furthermore, Levine fails to show a reasonable probability that but for the prosecutor's argument that she was presenting inconsistent defenses, the outcome of the case would have been different. Therefore, Levine's conclusory arguments fail to satisfy her burden under *Strickland*'s

---

[34] Levine Brief at 7.

prejudice prong.[35] More is required.

## IV. Conclusion

Because Levine cannot demonstrate either (1) that trial counsel's failure to request a mistake-of-fact instruction fell below an objective standard of reasonableness or (2) that his failure to object to the self-defense instruction prejudiced her, she does not satisfy her burden under *Strickland*. Therefore, we deny Levine relief.

DELIVERED: October 1, 2014

DO NOT PUBLISH

---

[35] *Strickland* 466 U.S. at 690.